IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EDGAR NOE GANDARA, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civ. No. 07-00804-CV-W-NKL |
| v. ) | Crim. No. 01-00202-07-CR-W-NKL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

Pending before the Court is Edgar Noe Gandara's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. # 1]. For the reasons set forth below, the Court denies Gandara's motion.

**I.   Factual Background**

On January 20, 2006, Edgar Noe Gandara, pursuant to a plea agreement, pled guilty to conspiring to distribute more than 500 grams of cocaine. Paragraph 3 of the plea agreement states: "Gandara frequently brought kilos of cocaine into the United States on his return trips from Mexico." Under the terms of the plea agreement, Gandara was entitled to the three-level reduction for acceptance of responsibility, resulting in a base offense level of 27. The parties did not agree to a criminal history category. As part of the agreement, the government agreed not to seek an upward variance from the advisory Guidelines range.

1

The sentencing hearing was held on June 14, 2006. The presentence report found Gandara smuggled wholesale quantities of cocaine and marijuana from Mexico to various cities in the United States. The PSR then calculated an offense level of 27 (including the three-level reduction for acceptance of responsibility) and a criminal history category of II, resulting in an advisory Guidelines range of 78 to 97 months. Gandara did not object to the PSR's recommendations. At the hearing, the government stated, "Recognizing, Your Honor, that the guidelines are at this point advisable, we also think they are in this case singularly appropriate." The government then explained it viewed Gandara's status as an illegal alien to be a matter of aggravation: "[W]e think that to grant credit for that status is, on the other side of the coin, to inflict, in effect, additional punishment against those who are citizens of this country who might also commit the same offense." The government then argued against the Court "leaving some head room" "for those higher in the chain who might be caught" in determining Gandara's sentence, explaining that drug quantity would structure the appropriate sentence for those "bigger fish." The government admitted that its informant "is admittedly someone of some dubious credibility" and that "while there may be more out there that Mr. Gandara is actually accountable for, what we know and what we can prove are different things." The government reiterated that what was readily provable was the three and half kilograms stated in the PSR.

At this point, Gandara's attorney responded to the government's comments, explaining that when Gandara was arrested in Missouri, "he was not in the course of

2

committing another crime" and not a target of the sting.  His attorney stated that, although he was advised that it was questionable whether the government could prove its case, "Mr. Gandara's response to me was no, I don't want to do that.  I want, I want to plead guilty, I've done what I've done, and I want to take responsibility for what I've done."  His attorney noted the relative sentences of other participants in the conspiracy and argued for the low end of the advisory range.  The Court then asked Gandara if he would like to make a statement.  Gandara said, "I want to accept my charges.  I want to tell you that I'm responsible for them, and I want to tell you that I regret all of this."

Finding the advisory Guidelines range to be 78 to 97 months, the Court varied upward, sentencing Gandara to 120 months.  In making this decision, the Court concluded that the Guidelines in this case did not adequately address the factors under 18 U.S.C. § 3553(a).  "In particular, I note that there is no adjustment for the defendant's role in this offense at all, even though he was, in fact, the supplier of the cocaine.  And I think while that may technically be an accurate application of the guidelines, it demonstrates to me a real deficiency in the guidelines that somebody who is bringing this stuff into the country from Mexico, from a foreign county is not going to have some kind of an adjustment for their role in the offense."  The Court noted it had some concerns about the PSR, specifically that it contained conclusory statements about drug quantity "based on corroborated statements" and that "[t]here is nothing in it that tells me who said this, why it was that, who said everything about Gandara."  The Court then explained that it did not take into account any additional drugs.  Instead, the Court based its variance on the fact

3

that Gandara brought drugs into the United States from a foreign country, "which I think is much more serious than somebody bringing drugs from California to here" because it "substantially increases the distribution network of drugs."

Gandara appealed his sentence but later voluntarily dismissed it because he and his counsel believed it lacked merit. He now brings this section 2255 motion contesting ineffective assistance of counsel because his previous attorney failed to object to the government's statements at the sentencing hearing, which he believes were in violation of the government's agreement not to seek an upward departure.

## II.     Evidentiary Hearing

On a motion to vacate, a movant is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *See Payne v. United States*, 78 F.3d 343 (8th Cir. 1996). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id*. Moreover, a district court need not hold an evidentiary hearing in a section 2255 case when the files and records conclusively show that the movant is not entitled to relief. *See Bradshaw v. United States*, 153 F.3d 704 (8th Cir. 1998). After reviewing the records and files, the Court concludes that all of Gandara's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is necessary.

4

## III. Discussion

To establish ineffective assistance of counsel, a movant must satisfy a two-part test. First, the movant must prove that his counsel's representation was deficient, and second, that the deficient performance prejudiced his case. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if he or she "failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (internal quotation omitted).

The prejudice component "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Further, "[w]hen considering whether the defense suffered prejudice, [the] court must determine whether there is a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (internal quotation omitted). This two-part test also applies where a defendant challenges a guilty plea based on the counsel's purported ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

First, Gandara's claim that the government violated the plea agreement is completely without merit.  At no point during the sentencing hearing did the government ask the Court to vary above the advisory Guidelines range.  In fact, the government stated that it thought the advisory Guidelines range was "singularly appropriate."  Gandara argues, though, that the government's statements were intended to remind the Court "that Gandara's status was different and that he should be treated more harshly than other defendants in the case."[1]  The government responds that it made these statements to suggest Gandara should not be sentenced near the low-end or below the advisory Guidelines range.  Gandara cites nowhere in the record, and the Court has found none, where the Government explicitly requested an above-Guidelines sentence, or even implied it was appropriate.  At no point during the hearing did the Court think the government was asking for an upward variance.

Further, Gandara asserts the government's statement about "leaving some head room" "for those higher in the chain who might be caught" was directed at Gandara and meant to suggest he should receive an above-Guidelines sentence.  A review of the sentencing hearing transcript reveals, however, that the government was arguing that

---

[1] In attempting to show that government's statements were disingenuous, Gandara's attorney cites to Marc Antony's funeral speech for Caesar.  *See* William Shakespeare, Julius Caesar act 3, sc. 2.  His attorney states, "While Antony claimed sorrow at Caesar's death, he took every opportunity to remind the assembled mourners of Caesar's villainy and tyrannical ways."  Doc. # 1 at 8.  However, Antony's speech—in which he turns the mob against Marcus Brutus and the other conspirators—is widely regarded as one of the finest examples of rhetorical persuasion.  Antony's description of Caesar's "villainy and tyrannical ways" actually demonstrates Caesar's kindness and honor, thus disproving Brutus's claims that he was ambitious.  This appears completely opposite to Gandara's attorney's intended meaning.

6

Gandara should not be sentenced near the low-end of, or below, the advisory range because future coconspirators "higher in the chain" would be held accountable for even higher drug quantities, which their Guidelines ranges would reflect. This supports the government's contention that it was arguing against a lower sentence, rather than for an upward variance. The government was not implying that Gandara was one of the "bigger fish."

Gandara does not dispute he was responsible for three and a half kilograms of cocaine. The Court expressly stated it took no other drugs or drug quantities into consideration when determining his sentence, which Gandara does not contest. He admitted, as part of his acceptance of responsibility, that he brought cocaine from Mexico into the United States for sale and distribution. The fact that Gandara was an illegal immigrant was already admitted and was also stated in the PSR; the government did not argue for an above-Guidelines sentence just by claiming it saw this as an aggravating factor. Gandara provides no facts to support his assertion that the government violated the plea agreement; therefore, he has failed to show his prior attorney was negligent for failing to object.

Nor has Gandara shown that there was a reasonable probability that the outcome of his sentence would have been different if his counsel had objected to the government's statements. Although he asserts that the outcome would have been different if the objections were properly preserved and presented to the Eighth Circuit, he cites no relevant support, Eighth Circuit or otherwise, indicating this is true. Moreover, Gandara

7

does not claim the Court improperly applied the 3553(a) factors, or that the sentence was beyond the Court's authority. Any statements Gandara could have objected to were either already admitted by him or contained in the PSR. Thus, under 3553(a)(1), the Court properly considered Gandara's status as an illegal immigrant as part of his personal history and characteristics. *See, e.g., United States v. Bautista*, 201 Fed. App'x 414, 419 (9th Cir. 2006) (holding district court properly considered defendant's status as illegal immigrant under § 3553(a)(1)). Finally, the Court was not bound by the plea agreement. *See Peters v. United States*, No. 07-6047, 2007 WL 2507754, at *2 (W.D. Mo. Aug. 30, 2007). As a result, Gandara cannot establish that had the government not made its statements, or if his previous attorney had objected, the Court would have imposed a different sentence.

**IV.   Conclusion**

Accordingly, it is hereby

ORDERED that Gandara's Motion to Vacate, Set Aside, or Correct Sentence [Doc. # 1] under 28 U.S.C. § 2255 is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: December 12, 2007
Jefferson City, Missouri